(Decided March 25th, 1896).

CHARLES W. SWEETING ET AL. *vs.* THE MUTUAL FIRE INSURANCE COMPANY IN HARFORD COUNTY.

*Fire Insurance—Condition Against Other Insurance—Invalid Policy —Burden of Proof.*

Where a policy of fire insurance contains a stipulation avoiding it in the event of other subsequent insurance without the consent of the first insurer, if the subsequent insurance is invalid the first policy remains in force, since the forfeiting condition prohibits a second *valid* insurance and not a mere ineffectual attempt to procure additional insurance.

Plaintiff obtained a policy of fire insurance in defendant company which contained a stipulation declaring that it should be void in the event of other insurance without the consent of the defendant.   Subsequently, without notice to the defendant, plaintiff procured a policy from another company on the same property, and this policy provided that the insurer would not be liable in the event of other prior or subsequent insurance, *whether valid or otherwise*, without the written consent of the company.   The second insurer had no notice of the prior insurance.   A loss having occurred, plaintiff sued on the first policy.   *Held*, that since the second policy was void *ab initio* on account of the non-disclosure, it did not constitute other insurance

within the prohibition contained in the first policy and that consequently the first policy was not avoided.

When the insurer contends that his policy is avoided by reason of a breach of the condition against other insurance, the burden is on him to show that there is a second insurance, and hence the validity of the second policy is directly put in issue in an action on the first.

Appeal from the Circuit Court for Harford County (WATTERS, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, ROBERTS, BOYD and RUSSUM, JJ.

*Stevenson A. Williams* and *H. J. Jewett, Jr.,* for the appellants.

It is perfectly clear that for two reasons at least, the plaintiffs had a right to recover.     1st. The subsequent policy, in order to invalidate the prior policy, must have been valid.     2d.  The burden of proof was upon the defendant to prove the validity of the subsequent policy. *Jackson* v. *Mass. Ins. Co.,* 23 Pick. 418 ; *Clark* v. *N. Eng. Ins. Co.,* 6 Cush. 342 ; *Barrett* v. *Union Ins. Co.,* 7 Cush. 175 ; *Forbes* v. *Agawam Ins. Co.,* 9 Cush. 470 ; *Hardy* v. *Union Ins. Co.,* 4 Allen, 217 ; *Jackson* v. *Farmers' Ins. Co.,* 5 Gray, 52 ; *Kimball* v. *Howard Ius. Co.,* 8 Gray, 33 ; *Thomas* v. *Builders' Ins. Co.,* 119 Mass. 121 ; *Wheeler* v. *Watertown Ins. Co.,* 131 Mass. 1 ; *Hughes* v. *Ins. Co. of N. Amer.,* 40 Neb. 626 ; *Stacey* v. *Franklin Ins. Co.,* 2 Watts & Serg. 506 ; *Hubbard* v. *Hartford Ins. Co.,* 33 Iowa, 325 ; *Behrens* v. *Germania Ins. Co.,* 64 Iowa, 19 ; *Phenix Ins. Co.* v. *Lamar,* 106 Ind. 513 ; *Firemen's Ins. Co.* v. *Holt,* 35 O. St. 189 ; *N. Eng. F. & M. Ins. Co.* v. *Schettler,* 38 Ill. 166 ; *Germania Ins. Co.* v. *Klewer,* 129 Ill. 599 ; *Gale* v. *Belknap Ins. Co.,* 41 N. H. 176 ; *Philbrook* v. *Ins. Co.,* 37 Me. 137 ; *Keyser* v. *Hartford Ins. Co.,* 66 Mich. 664: *Schenck* v. *Ins. Co.,* 24 N. J. Law, 447 ; *Donogh* v. *Farmers' Ins. Co.,* 62 N. W. Rep. (Mich.) 721 ; *Gee* v. *Ins. Co.,* 55 N. H. 65 ; *Phœnix Ins. Co.* v. *Copeland,* 86 Ala. 551 ; *Knight* v *Eureka Ins. Co.,* 26 Ohio St. 664.

*George L. Van Bibber*, for the appellant.

These conditions relating to prior and subsequent insurance are not arbitrary or unimportant, but, on the contrary, are reasonable and proper.   The security of the insurer requires that the total insurance upon property shall not exceed or even equal its value.   If it does the inducement to caution and carefulness on the part of the assured no longer exists, therefore it is that notice is required of all additional insurance.   Every new policy increases the risk by lessening the inducement of the assured to watchfulness and caution in preventing fire.   Over-insurance offers a motive or inducement on the part of the assured to destroy the insured property, and notice enables the insurer to determine whether it is willing to continue the contract.   *Carpenter* v. *Washington Ins. Co.*, 16 Peters, 495 ; *Simpson* v. *Pa. Ins. Co.*, 28 Pa. 250 ; *Bernard* v. *Ins. Co.*, 27 Mo. App. 26 ; *Lacky* v. *Georgia Co.*, 42 Georgia, 456.   Improper motives, want of proper caution and watchfulness in protecting the insured property from fire, actual participation in the destruction of the property, are all sought to be guarded against by these rules prohibiting other insurance without notice.   For these purposes and to serve these ends, it is entirely immaterial whether the second insurance is valid or not, if the assured believes it valid.   The plaintiff, Sweeting, could not have done otherwise than believe the York policy valid ; he applied for it, went to the agent a second time and accepted it back after he had once returned it, paid the premium in two installments more than two months apart, and after the fire, made claim for it.

A second policy is not void by reason of its containing the prohibitory clause in reference to other insurance, but it is voidable only at the option of the insurer.   This right to avoid the policy can be waived by the insurer and the policy is a valid subsisting obligation until the insurer either waives it or declares his intention to waive it.   The fact that it is at any time a contract only voidable and not void *ab initio*, renders it such a policy as is contemplated in the

policy sued on in this case when it speaks of subsequent in-
surance.   *Atlantic Ins. Co.* v. *Goodall*, 35 N. H. 328 ; *Hub-
bard* v. *Ins. Co.*, 33 Iowa, 325 ; *Stevenson* v. *Ins. Co.*, 83
Ky. 7.   The defendant contends. that the validity of a pol-·
icy claimed to be other insurance cannot be tried in a suit
against another company.    *Somerfield* v. *Ins. Co.*, 8 Lea,
547 ; *Gauthier* v. *Ins. Co.*, 44 Up. Canada, Q. B. 490.

McSHERRY, C. J., delivered the opinion of the Court.

The Mutual Fire Insurance Company. of Harford County
issued a policy of insurance against loss by fire to Mr. I.
Thomas C. Hopkins in March, eighteen hundred and
ninety-three.   The insured premises were subsequently
purchased by the appellant, Sweeting, and Mr. Hopkins as-
signed the policy to him.   In October, eighteen hundred
and ninety-four, additional insurance was granted by the
same underwriter to the appellant upon the same premises.
Amongst the terms and conditions annexed to and forming
a. part of the policy was the following : " If any property
insured by this company shall be already insured or shall
be hereafter insured by any other company or companies or
individual, or otherwise, such insurance or insurances must
be made known to this company and endorsed on the policy
or otherwise acknowledged in writing, or otherwise the
policy of this company shall be void."   In November,
eighteen hundred and ninety-four, the appellant, without
giving notice to or obtaining the. consent of the Harford
Insurance Company, and without disclosing to the second
insurer the existence of the first policy, procured a policy
for the same amount of insurance on the same property
from the Farmers' Fire Insurance Company of York, Penn-
sylvania.   In the policy issued by this last named company
it is provided and declared : " That this Company shall not
be liable   *   *   for loss if there is other prior or subse-
quent insurance whether valid or otherwise, without the
written consent of the company."   It is further stipulated
that " said company shall in no case be deemed to have

waived a full, literal and strict compliance with and per-
formance of each and every of the terms, provisions, con-
ditions and stipulations in this policy contained and hereto
annexed, to be performed and preserved by and on the part
of the insured    *    *    unless such waiver be expressed
and manifested in writing under the signatures of the presi-
dent and secretary of said company." On March the
eleventh, eighteen hundred and ninety-five, the dwelling-
house described in and covered by both the polices was de-
stroyed by fire, and both of the underwriters refused to
pay the loss ; the Harford Company because its policy was
avoided according to its contention by the subsequent in-
surance procured without its consent ; and the York·Com-
pany because the omission of the assured to disclose the
fact that he held a policy on the same property in the Har-
ford Company invalidated the policy of the York Company
issued in ignorance of the antecedent outstanding insurance
in the Harford Company. Subsequently this suit was
brought against the Harford Company to recover on the
policy issued by it—that policy being the first in date and
delivery. Upon the trial of the cause one exception was
reserved which brings up for review the rulings of the trial
Court upon the prayers for instructions to the jury. The
verdict and judgment were entered for the defendant, the
Harford Company, and the plaintiff has appealed. All of
the plaintiff's prayers were rejected and all of the defend-
ants were granted. Together they present but a single
question, and that question, though one of much interest
and importance, has not heretofore been raised in this Court
for decision. It is this : Does the fact that a subsequent
policy was procured without the consent of the first under-
writer avoid the first policy under the above quoted condi-
tions contained therein against other insurance, when the
second policy explicitly declares that the company which
issued it shall not be liable for loss if there is other prior
insurance, whether valid or not, held on the same property
without the written consent of the second insurer ?

There is a wide diversity of opinion on this question in the various Courts of this country. The doctrine laid down by the highest tribunals of Massachusetts, Pennsylvania and other States is, that the subsequent insurance being invalid at the time of loss, by reason of the breach of condition therein, the prior insurance is good and the first underwriter is liable on the policy issued by it. *Thomas* v. *Builders' Ins. Co.*, 119 Mass. 121 ; *Allison* v. *Phœnix Ins. Co.*, 3 Dill. C. C. 480 ; *Firemans' Ins. Co.* v. *Holt*, 35 Ohio St. 189 ; *Knight* v. *Eureka Ins. Co.*, 26 Ohio St. 664 ; *Stacey* v. *Franklin Ins. Co.*, 2 W. & S. 506 ; *Jackson* v. *Mass. Fire Ins. Co.*, 23 Pick. 418 ; *Clark* v. *N. E. Fire Ins. Co.*, 6 Cush. 342 ; *Hardy* v. *Union Ins. Co.*, 4 Allen, 217 ; *Philbrook* v. *N. E. Fire Ins. Co.*, 37 Me. 137 ; *Lindley* v. *Union Fire Ins. Co.*, 65 Me. 368 ; *Gale* v. *Ins. Co.*, 41 N. H. 170 ; *Gee* v. *Cheshire Ins. Co.*, 55 N. H. 65 ; *Jersey City Ins. Co.* v. *Nichol*, 35 N. J. Eq. 291 ; *Schenck* v. *Mercer County Ins. Co.*, 4 Zab. 447 ; *Rising Sun Ins. Co.* v. *Slaughter*, 20 Ind. 520 ; *May on Insurance*, sec. 364. On the other hand, it has been held elsewhere, that a subsequent policy, whether legally enforceable or not, or whether voidable on its face or voidable for extrinsic matter, works a forfeiture of the prior policy. *Carpenter* v. *Prov. Ins. Co.*, 16 Peters, 495 ; *Allen* v. *Merchants' Ins. Co.*, 30 La. An. 1386 ; *Somerfield* v. *Ins. Co.*, 8 Lea. 547 ; *Funke* v. *Minn. Far. Ins. Co.*, 29 Min. 347 ; *Lackey* v. *Georgia Home Ins. Co.*, 42 Ga. 456 ; *Bigler* v. *N. Y. C. Ins. Co.*, 22 N. Y. 402 ; *May on Insurance*, sec. 364. There is still an intermediate view taken by the Supreme Court of Iowa in the case of *Hubbard* v. *Hartford Fire Ins. Co.*, 33 Iowa, 325 ; to the effect that the question of the validity of the prior policy turns upon whether the subsequent policy has in fact been avoided. If the second policy is recognized by the insurer issuing it to be a valid policy any breach of condition being waived, this makes it a valid insurance and avoids the first policy ; but if the subsequent policy has been rescinded for condition broken, there is no other in-

surance so as to invalidate the prior policy. The obvious and insuperable objection to this latter view lies in the fact that it makes the validity of the contract between the parties under the first policy depend, not upon their own agreement, nor the effect of that agreement, nor upon their own acts, or the acts of either of them, but upon what another person—the second underwriter—a stranger to the first contract, may voluntarily do with respect to *affirming* or *repudiating* a totally different and distinct contract of insurance, without the slightest reference to any judicial inquiry as to the validity or invalidity of the second policy, or its resultant legal effect upon the first.

Now, as the parties to the first policy of insurance have, by the unequivocal terms employed in their contract, declared that if the property insured should be thereafter insured by any other company, the first policy should be void, unless the second insurance were made known to the first insurer and were endorsed on the policy written by it, or were otherwise acknowledged and assented to by it in writing; and as the manifest object and design of such a provision was to guard against the dangers supposed to be incident to a double or an over-insurance, the natural and reasonable interpretation of this forfeiting condition would, aside from adjudged cases, seem to prohibit a second *valid* insurance and not a mere ineffectual *attempt* to procure additional insurance. The two things are not identical. Other insurance does not mean a void policy which obviously affords no insurance at all; nor does it mean a policy which may, at the option of the underwriter, be cancelled, for that is at best but conditional insurance ; but it means a binding, available insurance, one upon which the insured can rely for protection in case of loss and which he can enforce by law, and which cannot be repudiated with impunity at the arbitrary election of the insurer. If the underwriter contemplated something else than a *valid* insurance under a second policy it should have been expressed in plain and unambiguous language, as was done by the

York Company.    Upon the face of the latter's policy it was expressly declared that the policy would be void if other insurance existed or were procured, even though the other insurance were itself invalid.    And such a provision has been recognized as effectual.  *Liverpool, &c., Ins. Co.* v. *Verdier*, 35 Mich. 3 95 ; *Bigler* v. *N. Y. Cent. Ins. Co.*, 22 N. Y. 96.    A second policy, which, by its own terms, is void for any cause, is not an insurance at all, and this is equally true whether the invalidity is apparent on the face of the policy itself or is made to appear by evidence *aliunde* the policy.    It is not the *method* by which the invalidity of the second policy may be shown that determines whether it does or does not create a liability on the part of the underwriter who issues it, and, therefore, does or does not constitute a breach of the condition in the first policy against further insurance ; but it is the *fact* that the second policy is valid and binding that alone fixes upon its underwriter a liability, and accordingly determines whether in this respect the condition against other insurance set forth in the first policy has been violated or not.    Hence, the inquiry is, not as to *how* the invalidity of the second policy may be shown, but as to whether it *is* invalid.    The parties to it themselves stipulate in it that it shall be void if there exists at the time of its issue undisclosed insurance in some other company, whether that prior insurance be valid or not.

If such insurance, valid or invalid, does exist, then, by the explicit terms of the contract, the second policy is void and not merely voidable.    Such is the distinct agreement of the parties themselves, and such is the character or *status* which they themselves have given to the second policy. To ascribe to the second policy, which the parties, in direct terms, declare shall be void if prior undisclosed insurance exists, the effect of annulling an antecedent policy not only ignores the agreement that stamps it as invalid, but involves the incongruity of treating the second policy as, at one and the same time, a subsisting, binding contract for the purpose of avoiding the first policy, and a nugatory policy in respect

to indemnifying the assured.    It cannot be both valid and invalid, nor can it be valid for one purpose and invalid for another.    If valid at all, it annuls the prior policy precisely because it *is* valid ; but to be valid for any purpose its explicit terms declaring it *invalid* must be deliberately disregarded.    If, then, its provisions be given the effect which the parties to it intended they should have, it is void, and not merely voidable, the moment the condition arises upon the occurrence of which the parties have declared it shall be invalid.    And if thus invalid, it obviously does not create other insurance within the prohibition contained in the first policy.    It would then be nothing more than an attempt to secure other insurance.    An ineffectual attempt to secure an insurance is confessedly no insurance, and a policy which, in terms, declares its own invalidity in the event of there being prior undisclosed insurance on the same property, is a policy, which, by the agreement of the parties to it, has never become binding if the prior insurance did exist, and consequently it grants no additional or other insurance whatever.    And if it grants no additional or other insurance, and is, for the reason stated and by the stipulation of the parties, a mere nullity, its issue by the insurer and its acceptance by the insured cannot invalidate antecedent insurance, which, by express provisions contained in the prior policy, is only to be avoided when subsequent undisclosed *insurance* is obtained.    Giving to the words of the contract of insurance set forth in the first policy their obvious meaning, and bearing in mind that they do not, as do those used in the second policy, relate to or specifically designate *invalid* insurance, the only tenable conclusion is, that the intention of both the contracting parties was to strike down the first policy only on the condition that the second was valid and binding.    And this is the conclusion reached by the best-considered cases.    If the "*other insurance*" does not mean such a contract of insurance as is legally enforceable, then no certain test can be applied and we abandon all legal guides.    " The sound conclusion would seem to be that in

cases like this the 'other insurance' must be legal insur-
ance, and that the true issue is whether the policy, not on
its face, but on all the facts legally in evidence, was binding
upon the insurer." *Dahlberg* v. *St. Louis Mut. Ins. Co.*,
6 Mo. App. 126.

. The leading case relied on to support the opposite doc-
trine is *Carpenter* v. *Providence Ins. Co.*, 16 Pet. 495.    In
commenting on this case, JUDGE DILLON, in *Allison* v. *Phœnix
Ins. Co.*, 3 Dillon, 484, remarks :    " The general, but not
uniform, opinion of Courts is that, to avoid the first policy,
the second policy must be valid, that it must constitute an
effective insurance, and we are inclined so to hold, if this
can be done consistently with *Carpenter* v. *Providence Ins.
Co.*, 16 Pet. 495.    The case last cited has been subjected
to much criticism (see *Clark* v. *New Eng. & Ins. Co.*, 6
Cush. 342 ; *Hubbard* v. *Hartford F. Ins. Co.*, 33 Iowa, 325 ;
*May on Insurance*, sec. 365, and the authorities there col-
lected), and it may be conceded that, though not unsup-
ported, it does not, at least in its reasoning, accord with the
prevailing view.    That case holds that the company which
issued the second policy (the Providence Company) was
entitled to notice of the prior insurance in the American
Company, though the policy in that company had been
' procured by misrepresentation of material facts ' and the
reason given (which has been criticised and its soundness
denied) is, that such a policy is ' not to be treated in the
sense of the law, as utterly void *ab initio*, but merely void-
able and as one that may be avoided by the underwriters
upon the proof of the facts, but until so avoided to be
treated for all practical purposes as a subsisting policy.' "
Carpenter's case was decided by the Supreme Court in 1842,
and the opinion of the Court was delivered by MR. JUSTICE
STORY.    Carpenter was denied a recovery on the Providence
policy—the second in order of time—because when it was
issued the insured held a prior policy in the American com-
pany, which fact was not communicated to the second un-
derwriter, and it was insisted that under the condition in

the Providence policy against prior insurance the policy sued on was avoided.   But it was replied that the American policy had been procured by misrepresentation of material facts and was therefore void ; and if void that it did not constitute a prior insurance which would invalidate the second policy.   This position the Supreme Court repudiated upon the distinct ground that the American policy was not *void* but only *voidable*, and until it was avoided it was to be treated as a subsisting policy.   Now, singularly enough, in 1839, the same plaintiff, Carpenter, brought suit on the American policy and the case was decided by MR. JUSTICE STORY.   1 *Story R.* 57.   In the course of the opinion delivered by him, he said : " We are clearly of opinion that the policy in this case having been obtained upon a misrepresentation of material facts is *utterly void.*" Thus in a suit on the American policy MR. JUSTICE STORY pronounced that policy " *utterly void ;* " whilst in a subsequent suit on the Providence policy he declared the latter invalid because the American policy was *not* void but voidable.   Carpenter was not allowed to recover on the *first* policy because it was held to be *utterly void* by reason of misrepresentations.   He was not permitted to recover on the *second* because that one was held to be void by reason of the first one being only *voidable*, which made it, though antecedently annulled, a subsisting outstanding prior insurance.   *Clark* v. *N. E. M. F. Ins. Co., supra.*   Obviously, one or the other of these conflicting decisions must be wrong.   If the second policy was void as held in 16 Pet., because procured whilst there was an earlier outstanding insurance in existence when it was obtained, then, manifestly, the earlier outstanding policy was not void when written, because if void then it would have been void always, and would have granted no insurance at all, and, therefore, would have been no breach of the second policy's condition against prior undisclosed insurance, and would, consequently, not have invalidated the second policy.   That the first policy was declared in the suit on the second pol-

icy not to be void is perfectly apparent, because the Court explicitly determined it was only *voidable*, and being only voidable, was binding until repudiated by its underwriter: But it could not be merely voidable in 1842, if in fact it had been not only theretofore repudiated by its underwriter; but besides this had been previously adjudicated by a Court of competent jurisdiction to be *utterly void* on account of material misrepresentations made by the assured at the time it was issued. In 1839 this first policy had actually been declared utterly void and not merely voidable. That decision has never been reversed and was in effect when in 1842 the *second* policy was held invalid because the *first*, which had been previously declared utterly void, was then treated as only voidable. If the first was void in 1839, it was equally void in 1842, and if void at all, a subsequent decision founded on the assumption that the first policy was simply voidable and not void—though it had been solemnly pronounced not voidable but utterly void—was incontestably based upon a mistaken and indefensible premise and is, of necessity, untenable. This is inevitable. For if the second policy was void simply because the first was but voidable, then if the first was really void the second must have been valid. As the first had been pronounced void in 1839 it could no longer be treated as only voidable and it ought, therefore, in 1842, to have been held as furnishing no ground for questioning the validity of the second. Either this is so or the prior decision striking down the first policy was wholly wrong and that policy was not void. Apart, then, from the criticism upon the reasoning of the Carpenter case alluded to by JUDGE DILLON, the decision itself is open to the serious objection that it rests upon a palpable error as to the status of the first policy.

But it is insisted that by a second policy on the same property, effected without notice to, or the assent of, the first underwriter, the insurer may believe he has obtained an over-insurance whereby the temptation to carelessness, if not to incendiarism, on his part, will be greatly in-

creased to the prejudice and probable loss of the insurer; and, to use the language employed in *The Phœnix Ins. Co.* v. *Lamar*, 106 Ind. 515, if a recovery be allowed on the first policy it "affords the anomolous spectacle of an insured avoiding the effect of apparent over-insurance and compelling payment of one policy by exhibiting his own turpitude in obtaining another." But the obvious vice of this position consists in its assumption, without proof, that the assured has acted in bad faith and necessarily has been guilty of fraud in securing the second insurance. There is no warrant in the law for making such an assumption in the absence of evidence; *Insurance Co.* v. *Holt*, 35 Ohio St. 192, or for its acceptation as a universal and unvarying rule. It is entirely possible, *first*, that two policies on the same property in the hands of the same individual will not in fact create an over-insurance; *secondly*, that the assured may not believe that the two policies create an over-insurance even if in fact they do; *thirdly*, that the second may have been procured with a view of discontinuing the first, whilst the loss intervenes before the actual cancellation of the earlier one; and *fourthly*, that though legally chargeable with notice of the prohibition against other insurance, the assured may be in reality ignorant of its terms and may, with a view to secure additional indemnity whilst in absolute good faith procure the subsequent policy. In any one of these contingencies it would be going beyond a legitimate presumption to hold inexorably that fraud or turpitude tainted the conduct of the assured.

Nor is there any substance in the objection that an inquiry into the validity of the second policy in a suit on the first one opens up an investigation of a contract between other parties which is wholly collateral to the issue on trial. The first policy is valid unless the defendant establishes its invalidity by reason of some breach of a material condition and the burden is on the defendant to show that there is a second insurance which invalidates the first, that is, that there is a second valid insurance. Hence the validity of such second policy is in the very nature of the case essen-

tially and directly put in issue.    That a policy of later date was issued is, of itself, not sufficient; it must be a policy which grants further insurance; and it can only grant further or other insurance in the event that it is valid.    Similar inquiries are frequently involved.    Thus where a first policy prohibited any increase of risk, and the insured increased the risk by erecting a building connecting house and barn; it was held that the first policy being at an end and of no effect by reason of this breach of one of its conditions, did not avoid the second policy.    The inquiry to ascertain whether the first policy was legally at an end was gone into in a suit on the second policy, and a recovery on the latter was sustained because the former was shown to be no longer in force.    *Jackson* v. *Far. Mut. F. Ins. Co.*, 5 Gray, 52.    Precisely the same principle would permit the insured to show the invalidity of a second policy in his suit on the first.    In each instance he would merely prove a fact upon the existence of which the validity of the contract which he seeks to enforce depends.

By the terms of the York Company's policy no waiver of any of its conditions can be shown unless such waiver was endorsed in writing on the policy.    Confessedly there was no waiver of any kind written thereon.    Upon its face then it contained an unwaived and effective condition avoiding it for prior undisclosed insurance in some other company.    The prior insurance was shown—the policy securing it was the cause of action in the suit on trial—and the second policy was consequently void.    Being void it created no other insurance at all and therefore did not impair the validity of the first policy.

It results from the views we have expressed that there was error in the ruling which granted the defendant's prayers and rejected those of the plaintiff.    Because of this error the judgment must be reversed and a new trial must be awarded.

> *Judgment reversed with costs above and
> below and new trial awarded.*

(Decided March 25th, 1896).