NATIONAL UNION FIRE INSURANCE COMPANY v. J. M. DORROH.

Decided December 22, 1910, January 19, 1911.

**1.—Concurrent Insurance—Over-insurance—Consent.**

A policy of insurance conditioned to become void on the insured taking out a policy in another company beyond the amount of concurrent insurance permitted, is not avoided where the agent of the insurer had notice of the additional insurance and did not object.

**2.—Over-insurance—Void Policy.**

The contract stipulating against concurrent insurance beyond the amount named is avoided by the taking out of an additional policy in excess of such amount, though issued and accepted under mistake and in lieu of a previous policy erroneously believed to have expired, though, after the loss, the mistake being discovered, such additional policy was returned to the insurer and cancelled.

**3.—Same.**

The provision against over-insurance "whether valid or not" covers the taking out of a policy in excess of the amount named, though not valid.

ON MOTION FOR REHEARING.

**4.—Cases Distinguished.**

Allemania F. Ins. Co. v. Fordtran, 128 S. W., 692, and Phoenix Ins. Co. v. Hayne, 34 S. W., 654, distinguished from this case.

Error from the District Court of Upshur County.   Tried below before Hon. R. W. Simpson.

*Wm. Thompson, Geo. S. Wright,* and *I. D. Fowler,* for plaintiff in error.—Where a policy of fire insurance contains a provision to the effect that it shall be void if the assured procure more insurance on the property than is permitted, other insurance upon the property without the consent of the company avoids the policy.   Gross v. Colonial Ass. Co., 121 S. W., 517; East Texas Fire Ins. Co. v. Blum, 76 Texas, 662; East Texas Fire Ins. Co. v. Flippen, 4 Texas Civ. App., 579; Westchester F. Ins. Co. v. Storm, 6 Texas Civ. App., 390; Orient Ins. Co. v. Prather, 25 Texas Civ. App., 446.

*J. P. Hart* and *Warren & Briggs,* for defendant in error.

LEVY, ASSOCIATE JUSTICE.—This suit was brought to recover on a policy of insurance against loss by fire on a certain building and on office furniture and fixtures and a bank vault.   The building and the furniture and fixtures were destroyed and the bank vault badly damaged by a fire occurring on January 8, 1909, during the existence of the policy.   The evidence warrants a recovery by the insured unless the policy was avoided by over-insurance.   The policy sued on contains the conditions that the entire policy shall be void if, without notice, the insured shall "make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."   The amount of concurrent insurance permitted by the policy was $10,000, as follows: $9500 on the building and $500 on furniture and fixtures.   The defense, among others, relied on was that defendant in error obtained further insurance, without consent or knowledge of the insurance company, in a sum in excess of the limit which had been prescribed and permitted in this policy, and for that reason had forfeited all right to recover on the policy sued on.   The reply to this defense of over-insurance was, first, by general denial; second, that the agent effecting the insurance sued on was given notice of the additional policy in the Orient Insurance Company for $1000 on furniture and fixtures at the time it was taken out, and did not object; third, that the policy issued by the Hartford Fire Insurance Company for $2000 on the building was issued by mutual mistake of fact of himself and the agent of that company that a policy for a like sum in the Royal Exchange Assurance Company had expired on November 13th previous, and that such policy was issued and intended to take the place of the policy believed at the time to have expired, and with the intent and purpose only of having a renewal thereof, and that as soon as it

was discovered that the said Royal Exchange policy had not in fact expired the Hartford policy was returned to that company and never took effect as a contract of insurance; fourth, that the other policies issued by Cook & Raines as agents were renewal policies and not requested or authorized by insured's knowledge or consent, and were returned to such agents with his objection to receiving them. The evidence shows that the Cook & Raines policies were not issued by procurement or consent of defendant in error, and were never effective by any agreement. There is no point, however, made here as to these latter policies, and therefore they do not enter into the appeal. The other two policies in question were issued subsequent to the policy sued on. The evidence offered by the insured in support of his answer thereto sufficiently appears below. There was trial to a jury, and a verdict in favor of the insured.

*After Stating the Case.*—The policy sued on provides against other insurance without notice or consent, "whether valid or not." The insurance company contends that according to the evidence it was conclusively established that the insured violated this condition of the policy, and that the court erred in not peremptorily instructing the jury as requested by it. It appears that the insured subsequently obtained a policy from the Orient Insurance Company for $1000 on furniture and fixtures, and a policy from the Hartford Fire Insurance Company for $2000 on the building. These two policies exceed by that sum the limit which had been prescribed and permitted in concurrent insurance by the policy sued on. These facts are not denied. The two policies present dissimilar questions for ruling, and are here considered separately.

The reply to the defense of over-insurance in the policy in the Orient Insurance Company for $1000 on furniture and fixtures was that the agent of plaintiff in error who effected the insurance had notice and knowledge that it was taken out. There is affirmative testimony on the part of the insured that he informed Perdue, the agent of the plaintiff in error, of the particular additional insurance at the time it was taken out, and asked for the endorsement of the permit. On direct examination Perdue says he did not have notice of this additional insurance prior to the fire, but on cross-examination he says he "might be mistaken about that. I have no recollection of his ever saying anything to me about it." The consent was not endorsed on the policy, it appears. But this omission is accounted for in the fact that Perdue, according to the several policies issued by him and where a permit for other insurance was admittedly granted, did not endorse such permit on them. Evidently an issue was there presented for decision of the jury. If it was true that the agent had notice of this particular additional policy, then the policy sued on was not avoided as to such additional insurance.

The replication to the defense of over-insurance in the Hartford Fire Insurance Company for $2000 on the building was that it was issued by mutual mistake of fact on the part of the insured and the insurance agent that a policy for a like sum in the Royal Exchange Assurance

Company had expired on November 13th previous, and that the said policy was taken out and issued in place of the policy believed at the time to have expired, and with the purpose and intent only of having a renewal thereof in the Hartford policy, and that as soon as it was discovered that the said Royal Exchange policy had not in fact expired the Hartford policy was returned to that company and never took effect as a contract of insurance. It appears that on Monday, January 4, 1909, T. L. Prothro, agent of the Hartford company, solicited insurance of the insured's son, who was managing the business for his father, and the son agreed that Prothro could write some insurance when an expiration of any present policy then held occurred, provided his father consented. Prothro knew there were policies in other companies on the properties but was not the agent of the other companies. On Tuesday, January 5, 1909, Prothro wrote up the policy and delivered it to the defendant in error. The fire that destroyed the property occurred on January 8, 1909, and originated in a store occupied by another, spreading to this property. According to the testimony of the son of the insured, it appears that on Tuesday morning, while casually looking at the policies held by his father, he noticed that the Hartford policy was endorsed on the back "Expires Nov. 13, 1908," and from that fact believed it had expired; and desiring that amount of insurance to take its place, he went over to Prothro's office and informed him that one of the policies had expired and he could write another. He says: "Prothro then went to the store, and father was there and I showed him the expiration date, according to the endorsement, and told him I was going to let Prothro write one in its place, and he said it was agreeable to him." "Prothro and I," he says, "then were at the time looking at the several policies had on the building, for the expiration dates on them; and the endorsement on the Royal Exchange policy marked to expire on November 13th was shown him, and he read it, and after he read it I then told him to go ahead and write a policy in its place for that amount on the building as it covered." This evidence is corroborated by the witness Holland. It was the insured's intention, he says, to take out this insurance in place of the Royal Exchange policy, under the belief that it had in fact expired, and he would not have taken it out if he had not believed the other policy had expired. It appears from the evidence that the Royal Exchange policy did not in fact expire until November 13, 1909. It does not appear from the record who made the endorsement on the back of the policy. The insured admits that his son was authorized to act for him. The son of the insured testified that the policies were kept in a safe, and that shortly after the fire, in looking over the policies, he for the first time discovered the mistake as to the expiration date of the Royal Exchange policy, and notified Prothro of the fact of the mistake, and showed him the policy. Prothro claimed this notice was given him on the 14th inst. It appears that on January 14th, after the fire on the 8th, an adjuster of the Royal Exchange Company, together with Prothro, the agent, came to the residence of the insured.

It does not appear on whose request, or why the adjuster came. The insured says that when they came to his house "Prothro told me his (speaking of the adjuster) name was Miller, and that he was an adjuster for the Hartford Insurance Company, and that we had taken the Hartford policy out by mistake and they wanted to have it corrected. At the time they were there I made an explanation as to how the policy came to be issued," and the insured further stated that he there and then made no claim under it. The son testified that the policy "was then turned over to Mr. Miller in my father's parlor. The circumstances under which that policy had been issued were explained to Mr. Miller." Prothro admits that the policy was surrendered to Miller, and further, that the insured made the statement to the adjuster that he did in his presence, and that he remained silent and said nothing concerning the statement. The testimony of Prothro further goes to show that the prior policy in question was previously examined at the time by him and the son, and it was known that it had not expired, and there was concurrent insurance allowed by including that prior policy, and there was no mistake that it had expired at the time of the issuance of the second policy in question. Taking only the testimony offered by the insured, it is seen there was a misapprehension on his and the agent's part as to the expiration of the prior policy in the Royal Exchange, and there was no intentional taking out of, and it was not relied on as, additional insurance over the limit prescribed and permitted in the policy sued on. In the proper case, where there is disputable ground in the evidence as to mutual mistake, it would no doubt be error to give a peremptory instruction to the jury. But in measuring the rights of the parties under the prior policy in this case, is the fact of mutual misapprehension as to the expiration of the prior policy sufficient legal ground to avoid the second policy *ab initio?* The bare fact that the prior policy had not expired was not an essential element of the contract that insured's son and Prothro were making. The insured's willingness to enter into such contract was perhaps caused by his erroneous belief that his prior policy had expired. But such erroneous belief was merely an impression in relation to a fact entirely collateral to the contract being entered into with Prothro. If the fact in question is collateral, and not an essential element of the contract being made, then the mistake is clearly inoperative, and a contract, though induced by reason thereof, is, as a matter of law, perfectly enforceable and valid. A mistake as to a collateral fact, not amounting to fraud or misrepresentation of the adverse party, it is said, is "an error for which the law furnishes no relief." 1 Page on Contracts, sec. 155. If, therefore, the second policy in question ever became effective as a contract of insurance, and we think it must be said it did, then it follows by the terms of the policy sued on that it was invalidated by the consummation of the second contract of insurance. East Texas Fire Ins. Co. v. Blum, 76 Texas, 653, 13 S. W., 572; East Texas Fire Ins. Co. v. Flippen, 4 Texas Civ. App., 576, 23 S. W., 550; Westchester F. Ins. Co. v. Storm, 6 Texas Civ. App., 390, 25 S. W., 318; Orient Ins.

Co. v. Prather, 25 Texas Civ. App., 446, 62 S. W., 89. And even if it could be said that the parties were dealing under a mutual mistake in respect to the fact in question, and it entered into the contemplation of both parties as a condition to their assent for the second policy, and it was invalid, it must still be ruled, as a matter of law in this case, that the prior policy was avoided by the fact, which was admitted, of the procurement of the second policy. The condition "whether valid or not" includes an invalid or void policy, and is enforceable. Wilson v. Aetna Ins. Co., 12 Texas Civ. App., 512, 33 S. W., 1085. It appears that the second policy was cancelled by the parties after the fire. But this fact would not prevent the working of a forfeiture, because the condition of the policy made it void, if the insured without consent shall "make or procure any other contract of insurance" than already permitted. And prior to its concellation there necessarily was valid insurance in violation of the condition of the policy sued on. In Replogle v. Ins. Co., 132 Ind., 360, 31 N. E., 947, it is said that a policy containing a condition making it void in case of other insurance without consent, is rendered void by the obtaining of additional insurance without consent, though such other insurance may not be in force at the time of loss. And this is in harmony with the rationale of the rule which forbids excessive insurance. The primary purpose of inserting conditions in a policy against other insurance than permitted is to protect the company from the hazard of over-insurance. The insured must carry some of the risk. "It aims," it has been said, "to secure the continual vigilance and co-operation of the owner in preserving the property and to compel him to maintain such an interest in, and relation to, the property as to have no motive for the relaxation of his care over it." It is, therefore, of value and permissible to so contract as to fully secure the purpose and policy aimed against over-insurance. That the insured, in good faith, and not intentionally and knowingly to over-insure, took out the second policy, will not justify or excuse the procuring of the second policy in violation of the terms of the first policy. The motive is immaterial and can not excuse the breach of a contract. In Pennsylvania F. Ins. Co. v. Kittle, 39 Mich., 51, with a clause similar to the one in question, it is said that belief that the original policy was invalid will not justify the taking out of additional insurance which is not consented to. In Sugg v. Insurance Co., 98 N. C., 143, 3 S. E., 732, with the same clause as here, it was held that forgetfulness of the existence of a prior policy afforded no excuse or defense. It must be here said, we think, that it conclusively appears that under the terms of the policy sued on it was avoided by the consummation of the policy in the Hartford company for $2000 on the same building; and because of that fact, that the court erred in not directing a verdict for the insurance company.

The insurance company has tendered the sum of $43.75, and asks that judgment be awarded against it in that sum, as being the amount of premium due the insured in cancellation of the policy, and there is

no question made as to its correctness. The judgment of the trial court is therefore reversed and here rendered for the plaintiff in error as to the suit of defendant in error for loss by fire, and in favor of defendant in error against plaintiff in error for $43.75, and defendant in error to pay all costs of the District Court and of this court.

### ON REHEARING.

The case of Allemania F. Ins. Co. v. Fordtran, 128 S. W., 692, is not in conflict with the ruling here. There the policy in the Glenn Falls Insurance Company actually expired on December 1st before the fire, and the agent of that company entered a renewal of the same. The renewal was without the knowledge or request of Fordtran, and was entirely the doing of the agent. The agent retained possession of the policy, and did not notify Fordtran of the renewal until after the loss. On this evidence it was held "that at the time of the fire Fordtran had contracted no insurance upon the property, except that represented by the policy of the defendant." On the same principle and facts it was ruled in the instant case that the Cook & Raines policies did not show over-insurance, because they were never effective by any agreement. The case of Phoenix Ins. Co. v. Hayne, 34 S. W., 654, likewise is distinguishable on the facts in the instant case.

The motion for rehearing is overruled.

*Reversed and rendered.*

Writ of error refused to Dorroh.