A. J. KELLEY, Appellant,

v.

The AMERICAN INSURANCE COMPANY, Appellee.

No. 7025.

Court of Civil Appeals of Texas.

Texarkana.

Sept. 16, 1958.

Howard S. Smith, Sulphur Springs, Woodrow H. Edwards, Mt. Vernon, for appellant.

Johnson, Guthrie & Stanfield, Dallas, for appellee.

CHADICK, Chief Justice.

This is a suit to collect for a loss under a fire insurance policy. The judgment of the trial court is reversed and rendered. In an effort to present the basis of this Court's judgment in a better organized manner, the original opinion in this case, dated July 15, 1958, is withdrawn and this opinion substituted therefor on motion for rehearing.

The statement of the nature of the case as contained in appellant's brief is very concise and the following portion is adopted.

"This is a suit on a fire insurance policy. Plaintiff, A. J. Kelley, sued defendant, The American Insurance Company, a corporation, in the District Court of Rains County, Texas, for the total loss of his residence by fire during the effective time of the policy issued plaintiff by defendant. The amount sued for was $3,000.00 which was the coverage provided by the policy. A jury being waived, the trial judge after hearing the case, entered a 'take nothing' judgment against the plaintiff, hence this appeal.

"Upon proper request by the plaintiff, the trial judge filed his Separate Findings of Fact and Conclusions of Law, in which he found against all the defenses pleaded by the defendant, but held against plaintiff because the evidence showed plaintiff had secured additional insurance after buying a policy of fire insurance from defendant.

"The main points presented by this appeal relate to the failure of defendant to plead specifically its defense of 'other insurance' and further that this defense is not applicable here because the policy itself does not provide for forfeiture if other insurance is secured, thus entitling plaintiff to judgment for his liquidated claim of $3,000.00."

The American Insurance Company of the City of Newark, New Jersey, issued its fire and extended coverage insurance pol-

icy No. 82979 to A. J. Kelley on August 18, 1956, insuring Kelley's one-story composition frame dwelling house located about four miles east of Point, Texas, for the sum of $3,000, and the household goods contained in the dwelling for the sum of $500. Thereafter, on September 11, 1956, the Home Insurance Company issued its fire and extended coverage insurance policy No. 1715, covering the same property in amounts of $1,500 upon the dwelling and $1,000 on household and kitchen furniture. Both policies are on the Standard Texas Policy Form, Edition June 1944—First Revision March 1, 1949. The first page of each of the policy forms except for the name of the Insurance Company is identical in form content. In the American Insurance policy following the itemized description of the property in which $3,000 coverage on the dwelling is listed as Item 1, and the $500 coverage on household goods is listed as Item 2, there appears this stipulation: "If the coinsurance clause is not applied, no other fire insurance is permitted unless the total amount, including this policy, on each item is inserted in the blanks which follow: Item No. 1, $3,000; No. 2, $500; No. 3, $——; No. 4, $——; No. 5, $——." This identical stipulation appears following the description of the property in the Home Insurance Company policy wherein Item No. 1 is $1,500 coverage on the dwelling and Item No. 2 is $1,000 coverage on the household and kitchen furniture, but no amounts were inserted in items No. 1 or No. 2, in other words, Items Nos. 1, 2, 3, 4 and 5 were left blank. Also in an endorsement to the American policy, dated August 18, 1956, there appears another stipulation in this language, "No other fire insurance is permitted on items insured hereunder unless permission is endorsed hereon." Then in another section of each policy under the heading, "Conditions Suspending or Restricting Insurance" there appears this provision: "Unless otherwise provided in writing added hereto, this Company shall not be liable for loss occurring: * * * (e) while any other stipulation or condition of this policy is being violated."

The record before this Court indicates that the trial judge concluded that procurement by Kelley of the Home policy without permission of the American Insurance Company endorsed on its policy had the effect of either voiding, or suspending for the duration of the violation of its policy terms, the coverage afforded by the American policy and as a consequence of the violation the policy did not cover and the Company was not liable for the loss occasioned by fire destroying Kelley's dwelling on October 1, 1956.

The appellant by his second point of error takes the position that the affirmative defense of other insurance is not applicable because the American Insurance Company policy does not provide for forfeiture if other insurance is secured. This point will be sustained by the entire Court.

The members of this Court have made a very diligent search to determine if a Texas court or a court of any other jurisdiction in a suit of this nature has had occasion to construe and determine the effect of the stipulations of a fire insurance policy substantially as those heretofore quoted, now appearing in a Standard Form policy. No case has been found. All cases which have come to the attention of the Court dealing with the question raised by appellant's second point of error were concerned with policies containing a provision substantially as follows:

"This entire policy, unless otherwise provided by an agreement endorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

This policy provision last quoted is taken from the case of British-American Assurance Co. of Toronto, Canada v. Mid-Continent Life Ins. Co., Tex.Com.App., 37 S.W.2d 742, 744. In that case each of the policies concerned contained the quoted provision and the court said at page 744:

"Under the settled law of this state the violation of the foregoing stipulation against other insurance rendered each of these policies void and barred any recovery thereon by the assured. New Orleans Ins. Ass'n v. Griffin, 66 Tex. 232, 18 S.W. 505; East Texas Fire Ins. Co. v. Blum, 76 Tex. 653, 13 S.W. 572; Orient Ins. Co. v. Prather, 25 Tex.Civ.App. 446, 62 S.W. 89; Wilson v. Aetna Ins. Co., 12 Tex.Civ. App. 512, 33 S.W. 1085; Hartford Fire Ins. Co. v. Post, 25 Tex.Civ.App. 428, 62 S.W. 140; Providence-Washington Ins. Co. v. Levy & Rosen, Tex. Com.App., 222 S.W. 216; Aetna Ins. Co. v. Waco Co., Tex.Com.App., 222 S.W. 217; Aetna Ins. Co. v. Jackson, Tex.Civ.App., 282 S.W. 656, 657; Boatner v. Home Ins. Co., Tex.Com.App., 239 S.W. 928."

This Court is satisfied that the statement of the law as made by Judge Leddy in that case was the prevailing view in Texas as applied to the policy provision before the court at that time. Likewise it seems such rule prevailed in the federal courts and in most of the jurisdictions of the United States, except Massachusetts, Iowa and Maryland. See Sweeting v. Mutual Fire Ins. Co., 83 Md. 63, 34 A. 826, 32 L.R.A. 570.

■ In comparison, it is very obvious that the limitation on concurrent or other insurance as expressed in the foregoing cases is worded in distinctly different language from the warranties of the present Standard Form. The warranty in the above cases contracts against (1) procurement of other contracts of insurance, (2) whether valid or not. The present Standard Form does not mention "contract of insurance" in its concurrent insurance or other insurance stipulation, nor make reference to the validity of the contract. The Standard Form merely says "no other fire insurance is permitted," etc. Because of this distinction it is thought that the foregoing cases are not controlling under the circumstances of this case in the construction of the Standard Form contract.

The appellee, American Insurance Company, contends that the reasonable meaning and effect of the stipulations heretofore quoted from its policy is that Kelley by the terms of the policy is not permitted to procure concurrent or other insurance unless he first secures the permission of the American to do so, and the permission, if given, be evidenced by proper addendum. The contention being further that Kelley's failure to secure American's permission to procure the issuance of the Home policy resulted in the suspension of the American policy under the terms of the American contract during the period of time the warranty against concurrent or other insurance of the American policy was breached. The appellant Kelley's contention as heretofore set out is that the defense of other insurance is not applicable because the American policy does not provide for forfeiture.

■■ In construing the American policy it is necessary to apply certain elementary rules of construction (all rooted in the same basic concept), including these: (1) An insurance policy will be construed strictly against the insurer; (2) when the terms of an insurance contract are capable of two or more constructions and under one a recovery is allowable and under the other it is denied, the construction which permits recovery will be given the policy; (3) forfeitures of insurance coverage is not favored; and (4) if a fair and reasonable construction of an insurance contract will permit, a meaning will be given to its language that effectuates a contract of insurance rather than defeats it. See 24-B Tex. Jur., Insurance, Secs. 26, 27, 28, 29, 30, 31 and 32, pp. 86–109, and authorities there listed.

■ No contention is made otherwise and there is no doubt but that the American policy was an enforceable binding insurance contract prior to the issuance of the Home contract and was in every sense of

the word effective insurance. Such status of the policy continues until the appellee, American Insurance Company, shows there is a breach of a material policy provision justifying a denial of recovery under the contract. St. Paul Fire & Marine Ins. Co. v. Westmoreland, 130 Tex. 65, 105 S.W.2d 203. Appellee asserts such breach is clearly shown.

■■ The appellee's contention reduces to this: That the American policy is suspended by the Home policy and the Home policy is suspended by the American policy. It becomes the duty of the Court to examine this contention under the guidance of applicable rules of construction. As between Kelley and American, Kelley's obligation was to refrain from securing concurrent or other fire insurance, etc. He did not contract to refrain from entering into an invalid, ineffective, non-operative, unenforceable fire insurance contract. The question for the Court to decide is what is "fire insurance" within the meaning of the term as used in the policy. The reasonable meaning of the term, strictly construed, is that "fire insurance" is the obligation of an insurer to indemnify the assured for loss occasioned by fire. In this strict sense, fire insurance from the assured's standpoint is the product of the fire insurance contract. See Glickman v. New York Life Ins. Co., 16 Cal.2d 626, 107 P.2d 252, 131 A.L.R. 1292; Kavanaugh v. Franklin Fire Ins. Co., 185 Cal. 307, 197 P. 99.[1] It is not the written memoranda of the contract, commonly called a policy, nor strictly construed, is it a nugatory obligation to indemnify.

Both the American and Home policies' total concurrent insurance clauses are identical in the Standard Form and the construction given one is applicable to the other. The concurrent insurance warranty of the Home policy was violated at the policy's creation by the existence of the American policy and in a strict sense it aborted and did not afford insurance coverage. There is little logic in a contention that the prior American policy has vitality only for a sufficient instant after the issuance of the subsequent Home policy to render the Home contract suspended and then immediately, after accomplishing the suspension of the Home policy, lapse into a state of suspension itself. Nor is it reasonable or a reasonable construction that the converse is true, that is, that the Home policy at its issuance afforded insurance in the strict sense and had vitality only for that instant necessary to suspend and render unenforceable the American contract, thereafter reverting to a state of suspension. The circumstance of the priority in time of the American policy and its admitted validity before issuance of the Home policy, under a reasonable construction, should not be discarded as of no significance but should be given effect as other factors are. Under appellee's contention effect is not given the priority and initial validity of the American policy.

■ Upon the record before this Court, the reasonable construction of the stipulation of the Home policy is that it being subsequent in time to the American policy, its obligation to indemnify aborted at the time of its creation as the American policy was in existence prior to it. As a consequence, the Home policy afforded no insurance in the strict sense of that word by its contractual terms and no insurance actually came into being at the issuance of the Home policy to breach the stipulation of the American policy. Under these circumstances the American policy was valid, effective, operative and enforceable at the time of the loss because Kelley had not in fact secured concurrent or other insurance upon the property. A clear and concise statement of the basic logic of this view was made by the Supreme Court of Mary-

1. This case recognizes the need to treat insurance policies as a commodity rather than a contract. This trend is also evi- denced by Art. 23, Vernon's Texas Civ. St., Sec. 1, defining life insurance as property.

land in Sweeting v. Mutual Fire Ins. Co., supra. The Maryland court had before it policies with provisions against other insurance somewhat similar to the warranty in the British-American Assurance Co. of Toronto, Canada, v. Mid-Continent Life Ins. Co., supra, but it states the reason of the rule here adopted so forcefully that a quotation seems justified:

"An ineffectual attempt to secure insurance is confessedly no insurance; and a policy which, in terms, declares its own invalidity in the event of there being prior undisclosed insurance on the same property, is a policy which, by the agreement of the parties to it, has never become binding, if the prior insurance did exist, and consequently it grants no additional or other insurance whatever. And if it grants no additional or other insurance, and is, for the reason stated, and by the stipulation of the parties, a mere nullity, its issue by the insurer, and its acceptance by the insured, cannot invalidate antecedent insurance, which, by express provisions contained in the prior policy, is only to be avoided when subsequent undisclosed insurance is obtained. * * * 'The sound conclusion would seem to be that in cases like that at bar the "other insurance" must be legal insurance, and that the true issue is whether the policy—not on its face, but on all the facts legally in evidence—was binding upon the insurer.' Dahlberg v. [St. Louis Mut. Fire & Marine] Ins. Co., 6 Mo.App. [121], 126." [83 Md. 63, 34 A. 828.]

The contention that the foregoing construction might encourage violation of public policy against over-insurance is largely without merit. Such merit as it has

does not outweigh the harshness of the rule of forfeiture as expressed in the British-American Assurance case. It is true that the insurer under a subsequent insurance policy might by its actions waive the defense implicit in this construction or fail to make a comprehensive investigation and overlook such defense or an avaricious person in ignorance of the effect of double insurance might procure additional insurance and destroy his property by fire. Only this last possibility increases the hazard, and proof of this would be an adequate defense. The mischief which might flow from such a contingency does not outweigh the harsh mischief flowing from the rule of forfeiture which voids insurance protection as the result of innocent mistakes, inadvertence and lapses in which no moral or legal wrongdoing is involved.[2] Under this construction supplemental insurance may be obtained without the peril of voiding all insurance protection by an insignificant mistake [3] or misunderstanding of the law.[4] Promulgation of the current Standard Form fire insurance policy was the beginning of a new era in Texas in that field of insurance, and the construction here made ameliorating the harshness of the former rule is in the public interest and accords with settled rules of construction.

Considered upon the foregoing basis, it must be said that the trial court was mistaken in its conclusion regarding other insurance. Kelley is entitled to recover upon his liquidated demand for total loss of his dwelling in the sum of $3,000, and the trial court's take-nothing judgment must be reversed and rendered to that effect. The suit did not seek to recover for loss of household goods or furnishings.

▇ The majority of this Court, the writer of this opinion not concurring, also

---

2. Fidelity-Phoenix Fire Ins. Co. v. Two States Telephone Co., Tex.Civ.App., 289 S.W. 726; National Union Fire Ins. Co. v. Dorroh, 63 Tex.Civ.App. 620, 133 S.W. 475.

3. Gross v. Colonial Assur. Co., 56 Tex.Civ. App. 627, 121 S.W. 517. Permission for

$35,000 was violated by procurement of $2,000 policy which increased total to $35,750, thereby voiding all insurance.

4. American Central Ins. Co. v. Montgomery, Tex.Civ.App., 60 S.W.2d 863, wr. ref.

is of the opinion that appellant's point of error No. 1 should be sustained because the appellee failed to plead its affirmative defense of "other insurance" as required by Rule 94 under authority of T. I. M. E., Inc., v. Maryland Casualty Co., Tex., 300 S.W.2d 68. The writer's view is that the provisions of Rule 94 do not apply because the defense of "other insurance" is not a rebuttal defense as contemplated by the Rule. It seems to the writer that the defense of "other insurance" is not a defense based upon an exception from the general liability of the American policy, but rather an effort to avoid the contract of insurance regardless of the general hazards insured against, or exceptions thereto. It is, in fact, a defense based upon violation of an affirmative warranty amounting to failure of consideration. See Bethea v. National Casualty Co., Tex.Civ.App., 307 S.W.2d 323, wr. ref.; St. Paul Fire & Marine Ins. Co. v. Westmoreland, 130 Tex. 65, 105 S.W.2d 203, at page 204.

The entire Court agrees that appellee's pleading did not allege the defense of "other insurance", not even defectively. But the writer holds that Rule 94 would not apply because the record shows that in this trial before the court the issue of other insurance was tried without objection from appellant until after judgment was rendered against him. The subdivision of Rule 94 concerning rebuttal defenses to insurance contracts is strict and the language used in the T. I. M. E. case, supra, if applicable, appears sweeping and all-inclusive in meaning in the rule it lays down, but the writer does not believe the Supreme Court thereby means to hold that Rule 94 is self-executing and no objection from the party relying upon it is required before judgment and its effect deprives a trial court of jurisdiction to try an affirmative defense not pleaded when no objection was made thereto. Rather, the writer thinks that Rules 67 and 90 require that the defense be treated in all respects as if it had been fully pleaded. See Thomas v. Linder, Tex.Civ.App., 231 S.W.2d 891, wr. ref.;

Bednarz v. State, 142 Tex. 138, 176 S.W.2d 562; National Bankers Life Ins. Co. v. Ezerneck, Tex.Civ.App., 278 S.W.2d 892. Among the circumstances distinguishing this from the T. I. M. E. case is that this is a trial before the court, the T. I. M. E. case before a jury, and in the T. I. M. E. case the rebuttal defense therein was not asserted until the Insurance Company's second motion for judgment notwithstanding the verdict, at which time there was objection to its assertion; thus, no question of the trial court having tried and rendered judgment on the defensive issue without objection arose and there was no occasion to apply either Rule 67 or Rule 90.

The majority of the Court sustains appellant's points of error Nos. 1, 2 and 3, and it is therefore ordered that this case be reversed and judgment rendered for the appellant.