**PAN AMERICAN FIRE AND CASUALTY CO., Appellant,**

v.

**Opal TRAMMELL, Administratrix, Estate of Willie Pierce Bonsal, et al., Appellee.**

No. 15459.

Court of Civil Appeals of Texas.

Dallas.

Feb. 13, 1959.

Rehearing Denied March 13, 1959.

Ramey, Brelsford, Hull & Flock and Tom B. Ramey, Jr., Tyler, for appellant.

Justice, Justice & Kugle, William H. Kugle, Jr., Athens, for appellee.

YOUNG, Justice.

This suit involves the basic medical payments coverage of a Texas Standard Automobile Liability insurance policy; plaintiff-administratrix having sued defendant company for the reasonable expenses incident to necessary funeral services for the Bonsals, each in the amount of $1,530, together with $259.45 medical expenses incurred prior to their deaths; penalty, interest and reasonable attorney's fee. Defendant by timely tender recognized its total liability under the provisions of said policy as being in the sum of $559.45; and upon answers to jury issues a judgment for plaintiff was rendered for $3,249.45, an additional 12% penalty damages and $750 attorney's fee (less the amount therefore tendered by defendant); from which this appeal is taken. Defendant had moved for instructed verdict at the close of testimony and for judgment non obstante vere-

dicto thereafter, which motions were overruled.

Defendant's automobile liability policy issued to Willie Bonsal, Henderson County, provided for medical payments to the extent of $2,000 for each person (husband and wife); pertinent here reciting: "Coverage C–1—Basic Medical Payments—To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services, to or for each person who sustains bodily injury, sickness or disease, caused by accident, while in or upon or while entering into or alighting from the automobile, provided the automobile is being used by the named insured or his spouse if a resident of the same household, or with the permission of either."

Willie Pierce Bonsal and wife, Ella sustained fatal injuries about March 4, 1957 in an automobile collision occurring in Navarro County, he dying instantly and wife some 48 hours later. The bodies were brought to Athens for burial, with interment at Payne Springs, same locality. Prior to suit, Opal Trammell, daughter and administratrix of the estates of the deceased couple, had made demand upon defendant for cost or expense of the funeral services furnished and rendered by the Hassell and Foster Funeral Home at Athens ($1,-530 in each case) claimed as reasonable and necessary, which defendant refused to pay, except in the amount of $150 each of said funeral service; the additional amount of tender being $249.45 medical, hospital and nursing expenses incurred.

The trial court submitted the above matter of liability in two issues, the first reading: "From a preponderance of the evidence, what do you find to be a reasonable charge for such funeral services rendered to Willie Bonsal as were necessary? Answer in Dollars and Cents. Answer: $1,-495. The term 'necessary' as used in the foregoing Special Issue includes those services and items which are generally and by common usage done or furnished or provided as part of a funeral. In arriving at your answer to the above foregoing Special Issue, you will not allow anything for flowers." The Second Special Issue was identical in form except as to name (Ella Bonsal) with like answer of $1,495; also as to definition of "necessary", and instruction excluding the item of flowers.[1] Under Issue No. 3, the jury found that $750 was a reasonable fee for the services of plaintiff's attorneys.

Defendant requested and the Court refused the following definitions to be given in connection with above Issues 1 and 2: "The term 'necessary', as used in the foregoing Special Issue, includes those services and items which are generally and by common usage done or furnished or provided as part of a funeral, in keeping with the income, size of the estate, and station in life of the deceased at the time of his death." "By the term 'reasonable charge' you are instructed that you must take into consideration the income, size of the estate, and station in life of the deceased at the time of his death in the vicinity in which they were made."

Among further lengthy objections to the Court's charge defendant complained that Issues 1 and 2 were multifarious and duplicitous in that they submitted "two separate and distinct questions; that is, whether or not the charges were reasonable and whether or not the services rendered were necessary. And the jury could find that

---

1. The Hassell and Foster Funeral Homes' itemized bills for funeral services were identical for each deceased and as follows: "Pick up and Embalm 'Corsicana, Texas' $75, Hearse $50, Clothing $80, Cemetery Equipment $60, Open and close grave $32.50, Grave Marker $4.75, Flower car $17.50, Family car $17.50, Registration book $6.75, Acknowledgment cards $13.50, Flowers $35, Use of Layaway Room $42.50, Outside wooden box $32.50, 1–32 oz Copper casket $1,062.50. Total $1,530".

some one or more elements of the said services rendered were not necessary, and yet find that the charges made therefor were reasonable charges." In such connection defendant requested that each of plaintiff's items of recovery claimed as reasonable expense of necessary funeral services be submitted in the following form: "Defendant's Requested Special Issue No. 1. Do you find from a preponderance of the evidence that flowers were a necessary funeral service for Willie P. Bonsal, as that term has been defined for you? Answer 'yes' or 'no'. Answer: ———. If you have answered the foregoing Special Issue 'yes' and only in that event, then answer Defendant's Requested Special Issue No. 2. What do you find from a preponderance of the evidence to be a reasonable charge for such services as were inquired about in the preceding Special Issue? Answer in Dollars and Cents. Answer ———."

It was developed from the testimony of plaintiff-administratrix that her parents at time of death were both over 60 years of age. In application for administration she had alleged that each of their said estates were of the probable value of $1,000; the Bonsals residing in a three room frame house on a 25 acre tract of land that Mrs. Bonsal had inherited from her parents, they owning no other property. The house had cost $200 or $300 when moved onto the place some 18 or 20 years before, a room having been added. They had no telephone, their only vehicle being their 1949 Ford half-ton pick-up truck involved in the accident. At time of death they had approximately $45 in cash, no bank account, stocks, bonds or other investments; no jewelry or other personal possessions. Willie Bonsal owning but one suit of clothes. Neither of the deceaseds had engaged in public work the year immediately preceding death, Mr. Bonsal's only employment during said year being to raise one crop on a ten acre truck farm. The only years he had ever made income tax returns were in 1954 and 1955, when his employer had filed withholding returns.

Of the total funeral bill for each deceased, $1,062.50 was for a 32-oz. copper casket. Director Foster of the Funeral Home testified that $900 was average cost of a funeral conducted by his concern over the year immediately preceding. The least expensive funeral service offered by them was $150, of which price the casket was $52. The Bonsals each had a subsisting $150 burial policy with this funeral home at the time of their deaths. Mr. Foster further stated that prior to selection of the caskets, plaintiff had inquired of him if the balance in excess of the medical and funeral expenses up to the $2,000 limit could be paid to the survivors in cash and when advised in the negative, the $1,530 service was selected. Here it will be noted that following the Court's jury instruction that they could not consider the $35 charge for flowers, the jury found that $1,495 in each case was a reasonable charge for such funeral services as were necessary.

It will be further noticed that the Trial Court's definition of "necessary" as given is not objected to; appellant complaining however of its failure to add thereto "in keeping with the income, size of the estate, and station of deceased at time of * * * death;" also that the term "reasonable charge" should have been defined to include like wording.

█ The limitation above quoted has been applied generally to the amount of the funeral expenses allowable against a decedent's estate to the end that rights of creditors or other interested parties be no unduly infringed upon, or the estate dissipated; 4 A.L.R.2d 1000. It derives in Texas from Article 322, Probate Code V.A.T.S. (Old Art. 3531, Revised Statutes) requiring that funeral expenses and of last sickness to have priority must be reasonable. Goeth v. McCollum, Tex.Civ.App., 94 S.W. 2d 781. But we cannot agree that such a limitation must be imposed as a matter of law upon this insurer's promise to pay. In the purchase of this policy, the same premium charge of $35 was exacted of all those

of like classification as assured Willie Bonsal; (mainly, according to the insurance agent, age and marital status;) the contract providing no method for determination of its liability to pay "all reasonable expense * * * for necessary funeral services," other than as may be found in the facts of the particular case. As appellee points out, if defendant had wished to so limit its liability, it could have done so by addition of the quoted wording, with adjustment of premium charge in accordance.

■ In Alamo Cas. Co. v. Smith, Tex. Civ.App., 266 S.W.2d 416, a case construing an identical stipulation on coverage, a definition of "necessary" was stated; availed of by Judge Johnston in his charge and to which appellant voiced no objection. It is implicit in that opinion that testimony involving income, size of estate and station in life of the assured at time of death was admissible on the issue of "necessary" funeral services, to be given due consideration by the jury. The requested definition however would obviously constitute a comment on weight of the evidence. Likewise to be given due weight by the jury was the fact that each of the deceased persons had a policy of insurance providing for only a $150 funeral service.

On cross-examination of funeral home director Foster, appellant had attacked all items on his bill as being unreasonable in price. Also that as a matter of law the charges for burial clothing, registration books, family car, flower car, and the grave marker, were not necessary to funeral services under terms of the policy in question. Mr. Foster in turn testified that all charges were in line of those of other funeral homes in that area.

■ Defendant's liability under its promise to pay a reasonable expense of necessary funeral services was submitted in a single issue as to each of the Bonsals. Defendant objected to such manner of submission as duplicitous on grounds already stated; requesting separate and distinct issues, first as to whether a particular service was necessary, and predicated upon that, an inquiry of the reasonable charge therefor. Manifestly appellant's point 18 must be sustained. The Issues in the Court's charge presented two controverted ultimate questions of fact; the Beaumont Court in Alamo Cas. Co. v. Smith, supra, recognizing that reasonable expense of the vault there involved was a distinct issue though not raised. Appellee tacitly admits to the compound nature of Issues 1 and 2 in her answer to point 18; stating that (emphasis ours) "we cannot inquire of the jury in a case like this whether the services rendered were necessary for the reason that the jury might well conclude that *some of them were necessary and some were not.* We cannot then ask the jury what the reasonable value of the service was, because the jury is only required to find the *reasonable value of such services as were necessary."* Appellee says that "defendant did request that the issues be separated", but mistakenly asserts "that it did not indicate to the Court the manner in which this might be accomplished." Appellant's objections fully apprised the court of the errors of submission; requesting that all items of recovery be submitted in a form as hereinabove quoted. This was a sufficient compliance with Rules 277, 279, Texas Rules of Civil Procedure; 41–3 Tex.Jur. § 427 p. 548 and notes.

■ Appellant's last several points claim error in the Court's rendition against it of attorney fees and 12% penalty in that it was a fire and casualty company and not subject to penal provisions of Art. 3.62 Vernon's Ann.Civ.St.Insurance Code, until the enactment of 1957 (3.62–1, Insurance Code, V.A.C.S.;) plaintiff's bill for funeral services having accrued prior to date of said legislation. Art. 3.62 (Old Art. 4736) provides: "Delay in Payment of Losses; Penalty For. In all cases where a loss occurs and the life insurance company, or accident insurance company, or life and accident, health and accident, or life, health

and accident insurance company liable therefor shall fail to pay the same within thirty days after demand therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of the loss, twelve (12%) per cent damages on the amount of such loss together with reasonable attorney fees for the prosecution and collection of such loss." In the same connection Art. 3.01 (Old Art. 4716) reads in part: "An accident insurance company shall be deemed to be a corporation doing business under any charter involving the payment of money or other thing of value conditioned upon the injury, disablement or death of persons resulting from traveling or general accidents by land or water." Art. 3.62–1, passed by 55th Legislature effective 90 days after May 23, 1957, provides: "Delay in Payment of Losses on Policies Issued by Casualty and Other Companies; Penalty. In all cases where a loss occurs and the general casualty company, local mutual aid associations, mutual casualty company, Lloyds organizations, reciprocal exchange liable therefor under a life, health, or accident policy issued by any such insurer shall fail to pay the same within sixty days after filing written proof of loss thereto, such insurer shall be liable to pay the holder of such policy, in addition to the amount of the loss, twelve per cent (12%) damages on the amount of such loss, together with reasonable attorney fees for the prosecution and collection of such loss." The emergency clause of above Senate Bill reads: "The fact that some insurance companies and benefit societies which fail to pay losses within sixty (60) days after filing written proof of loss thereof with respect to life, health and accident policies are not liable for a twelve per cent (12%) penalty plus attorney fees, and the fact that all such agencies should be subject to such liability, create an emergency * * *".

Although appellant is a fire and casualty company, it is admittedly authorized to write health and accident insurance; arguing, however that this authorization is pursuant to Chap. 8, Art. 8.01 (Old Art. 4989). "General Casualty Companies"; and casualty insurance as distinguished from life, health and accident policies, the subject of Chap. 3, and to which Art. 3.62 is confined; that the statute in question, being penal in nature, must be strictly construed; National Educators Life Insurance Co. v. Morgan, Tex.Civ.App., 295 S.W.2d 713; and that Art. 3.62 was not applicable to general casualty companies until expressly made so in the 1957 enactment.

Here it will be noticed that Senate Bill 155, Chap. 387, Acts, 55th Legislature does not purport to constitute an amendment of Art. 3.62 but is in effect an independent bit of legislation with respect to this enlarged category of insurance companies. The penalty follows a failure to pay *within 60 days after proof of loss,* while under Art. 3.62 it is within *30 days after demand therefor.* The latter Article is not supplanted by the 1957 enactment and continues as valid and subsisting law. Plaintiffs cause of action accrued prior to date of Art. 3.62–1, making Art. 3.62 applicable thereto. Casualty Companies authorized to write policies insuring against accidental bodily injuries, disablement or death have been held to be within purview of Old Statute 4736 (now Art. 3.62). See Dorsey v. Fidelity Union Casualty Co., Tex.Civ.App., 52 S.W.2d 775; Syl. 3 holding: "Casualty insurer doing business under charter involving payment of money conditioned on injury resulting from accident held 'accident insurance company' within statute imposing liability for penalty and attorneys' fees for refusal to make timely payment (Rev.St.1925 arts. 4716, 4736, 4989–5012, and art. 4989, subd. 1)."

In the introductory to Vol. 14, Insurance Code, it is stated that all judicial constructions and interpretations of prior insurance laws are preserved under the corresponding or similar provisions of this Code. The points just under discussion are overruled.

However point 18, having been sustained, the judgment under review is reversed and cause remanded for another trial.