473 F.2d 619
 Betty Geneva BOGART, a widow, Individually and as Guardian
of the Estates of Sally Long Bogart, etc.,
Plaintiff-Appellee,
v.
TWIN CITY FIRE INSURANCE COMPANY, Defendant-Appellant,
Trans-America Insurance Company, Intervenor-Appellant.
 No. 72-1502.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 24, 1973.
Rehearing Denied March 9, 1973.
 
 Donald Carroll, Tyler, Tex., Lancaster Smith, Dallas, Tex., Mike A. Hatchell, Tyler, Tex., Harvey L. Davis, Dallas, Tex., for intervenor-appellant.
 Charles D. Mayes, Ben Warder, Jr., Dallas, Tex., for plaintiff-appellee.
 Before COLEMAN, AINSWORTH and DYER, Circuit Judges.
 DYER, Circuit Judge:
 
 
 1
 Mrs. Bogart brought suit against Twin City Fire Insurance Company, the insurance carrier of her family's automobiles, to recover damages resulting from the death of her husband and from the injuries suffered by her and her children in an automobile accident allegedly caused by an uninsured motorist. After finding Summerfield, the uninsured motorist, guilty of five counts of negligence, the district court entered a judgment for $56,830, exclusive of costs, penalty interest, and regular interest from the date of judment. Twin City appealed from the findings of negligence and from various portions of the award of damages. TransAmerica Insurance Company, the workmen's compensation insurance carrier for Mr. Bogart's employer, who intervened in the court below, appealed from the district court's refusal to allow it subrogation rights so that it could recover the $16,150.13 in benefits it had previously paid the Bogarts. We affirm in part and reverse in part.
 
 I. Facts
 
 2
 On January 16, 1970, Mr. and Mrs. Bogart and their children left their home in Tyler, Texas, and drove west on Interstate Highway 20 toward Dallas, where Mr. Bogart was to attend a United Press meeting on behalf of his employer. As they neared Dallas, an intoxicated driver entered the eastbound lanes by means of an exit ramp and proceeded to drive westbound into the face of oncoming traffic. Several automobiles avoided this errant vehicle and managed to pull over to the side of the highway. The Summerfield automobile, traveling eastbound, also was able to miss this vehicle, but in the process swerved to the right and then careened back to the left, crossed the median strip and crashed into the Bogarts' 1970 Plymouth. Mr. Bogart and Summerfield were killed in the crash.
 
 
 3
 At the time of the accident the Bogarts owned two automobiles, a 1970 Plymouth and a 1966 Ford Mustang, and insured them both under a single policy issued by Twin City.[1] This policy included protection against uninsured motorists as required under Texas law.[2] Although questioned in the court below, it is now accepted that Summerfield was an uninsured motorist operating an uninsured automobile, as those terms are defined in the Twin City policy.
 
 II. Findings of Negligence
 
 4
 The district court, after a nonjury trial devoted largely to reconstructing the actions of the various vehicles prior to the Bogart-Summerfield collision, found that Summerfield was guilty of five counts of negligence: (1) failing to maintain a proper lookout; (2) failing to make a reasonable application of the brakes on her automobile; (3) causing or permitting her automobile to proceed to its left; (4) failing to keep and maintain her automobile under reasonable control; and (5) causing her automobile to cross over the dividing section of I-20 in violation of section 62, article 6701d, Vernon's Ann.Tex.Civ.St.[3] After a careful review of the record we find ourselves with no "definite and firm conviction that a mistake has been committed." Chaney v. City of Galveston, 5 Cir.1966, 368 F.2d 774, 776. Instead, there is ample evidence to support the district court's conclusion that Summerfield acted negligently and proximately caused the accident and the findings of fact upon which this conclusion was rendered are not clearly erroneous. Fed.R.Civ.P. 52(a).
 
 III. Stacking of Policy Limits
 
 5
 Having affirmed the district court's findings of negligence, the most important question that relates to the extent of Twin City's liability is whether the Bogarts should be allowed to "stack" or "pyramid" the policy's limitation of liability by virtue of the fact that the family had paid premiums for uninsured motorists coverage on two separate automobiles under the same policy. The policy in effect at the time of the accident limited Twin City's liability for bodily injuries to $10,000 for each person, not to exceed $20,000 for each occurrence. To obtain this coverage on the 1970 Plymouth, which was automobile #1 under the policy, the Bogarts paid a $4.00 premium. Up to the stated limits, this $4.00 provided coverage for the named insured and any relative, and for any other person while occupying an insured automobile;[4] these people were protected against bodily injuries, including death, "caused by accident and arising out of the ownership, maintenance or use of [an] uninsured automobile." From the policy it is clear that a nonrelative must be injured in "an insured automobile" in order to recover, but, in the absence of a similar limitation applicable to the named insured or a relative, Twin City covers them regardless of where injured by an uninsured motorist.[5] This could conceivably occur while on foot, while riding in a non-owned automobile, or, as in this case, while riding in an owned, insured automobile. Given the breadth of this coverage, there is no dispute about the Bogarts recovering under the insurance purchased with respect to automobile #1.
 
 
 6
 The difficult question is whether the $3.00 premium paid by the Bogarts to include their 1966 Mustang-which was automobile #2-within the uninsured motorists coverage, also protected them while they were riding in automobile #1. There is no separate section of the policy which details the coverage afforded a second car. Thus, if the problem is analyzed only by looking at the insurance policy itself, we would conclude that the $3.00 premium purchased the same insurance for automobile #2 as the $4.00 premium purchased for automobile #1; this would include protection for the named insured and any relative wherever injured by an uninsured motorist.[6] This interpretation, if followed, would require stacking the coverage of the two automobiles.
 
 
 7
 Because this is a diversity action, however, we are not at liberty to decide the case on the basis of our interpretation of the policy; instead we are bound to apply the Texas law and to make an "Erie-educated guess" as to what the outcome of this case would have been had it been brought in a Texas court.
 
 
 8
 One of the earliest Texas stacking cases was Southwestern Fire & Casualty Co. v. Atkins, Tex.Civ.App.1961, 346 S.W.2d 892, in which the plaintiff sought to double the maximum recovery under his medical payments insurance because he had two cars insured under the same policy. He had paid a premium of $8.00 for medical coverage on the first automobile and $7.00 for the coverage on the second. The court allowed stacking because of a "two or more automobiles" clause (described in footnote 6) and because separate premiums had been paid for insurance against an event that was not necessarily tied to an accident in either of the automobiles. See also Harlow v. Southern Farm Bureau Casualty Insurance Co., Tex.Civ.App.1969, 439 S.W.2d 365.
 
 
 9
 The Texas Supreme Court in Allstate Insurance Co. v. Zellars, Tex.1970, 462 S.W.2d 550, took the next significant step and denied stacking the limits of liability under non-owned vehicle insurance when the plaintiff was injured in an automobile other than his own. The court seized on the separate premium feature of Atkins and stated: "If Zellars had in fact paid an additional premium for non-owned automobile coverage when he added the second car to his policy, the medical payments cases would lend stronger support to his claim." Id. at 556. The Zellars court based the distinction it drew between medical coverage and non-owned vehicle coverage on the decision of this court in Allstate Insurance Co. v. Mole, 5 Cir. 1969, 414 F.2d 204 (applying Florida law). In Mole it was specifically noted that unlike non-owned vehicle coverage, both medical and uninsured motorists coverage were
 
 
 10
 derived from a specifically insured vehicle and a separate premium was paid for each type of insurance on each vehicle . . . . Moreover both the medical and uninsured motorist protection, though purchased with insurance on a particular vehicle, was [sic] payable whether the insured was injured in that vehicle or some other.
 
 
 11
 Id. at 207.
 
 
 12
 The next major development in the stacking of limitations of liability under Texas law was Fidelity & Casualty Co. v. Gatlin, Tex.Civ.App.1971, 470 S.W.2d 924, in which it was held that, despite the existence of an "other insurance" clause,[7] an insured could stack the limit of his own uninsured motorists coverage on top of similar coverage in another policy which was applicable to the same accident. The court stated:
 
 
 13
 [W]e hold (1) that our uninsured motorist statute sets a minimum amount of coverage but does not place a limit upon the total amount of recovery so long as that amount does not exceed the amount of actual loss; (2) that where the loss exceeds the limits of one policy, the insured may proceed under the other available policies; (3) and that where uninsured motorist coverage has been provided, we cannot permit an insurer to avoid its statutorily imposed liability by its insertion into the policy of a liability limiting clause which restricts the insured from receiving the benefits of that coverage.
 
 
 14
 Id. at 928.
 
 
 15
 Considering the posture of the Texas law on stacking insurance coverage it is hardly surprising that the district court allowed stacking: (1) The Bogarts had clearly paid two premiums for the kind of coverage under which they claimed, which was not the case in Zellars; (2) under the policy, recovery was not tied to injuries sustained while in either automobile, which was the distinguishing factor in Mole; (3) a difference in premiums between automobile #1 and automobile #2, while arguably suggesting reduced coverage for the second automobile, had not bothered the Atkins court at all; and (4) the damages suffered by the Bogarts were sufficient to preclude the double recovery cautioned against in Gatlin. The one potential weakness in the Bogarts' case seemed to be that the "two or more automobiles" clause did not apply to the uninsured motorists section. Although Texas courts have used the applicability of such a clause to bolster the argument for stacking, they have never tackled the problem when such a clause was specifically stated to be inapplicable to the kind of insurance at issue. (See footnote 6). The only impact that this fact could have, however, is that it might create an ambiguity over the otherwise strong case for allowing stacking. Under Texas law this would not require the drawing of a mandatory negative inference, but would trigger the general rule that an uncertainty in the fact or extent of coverage will be strictly construed against the insurance company. See, e. g., Kelley v. American Insurance Co., Tex.Civ.App.1958, 316 S.W.2d 452, 455, aff'd, 1959, 160 Tex. 71, 325 S.W.2d 370.
 
 
 16
 Despite the seeming reasonableness of the decision below to allow stacking, we must reverse and hold that, under the facts of this case, stacking would not be allowed in Texas. Six months after the district court's judgment, the Texas Supreme Court decided a case that presented a fact situation similar to the Bogarts. American Liberty Insurance Co. v. Ranzau, Tex.1972, 481 S.W.2d 793, aff'g Tex.Civ.App.1971, 473 S.W.2d 249. In Ranzau the plaintiff had been injured when the non-owned vehicle in which she was riding was struck by an uninsured motorist. Because the plaintiff's father owned, and insured under the same policy, two cars, for which he had paid $4.-00 and $3.00 respectively in order to obtain uninsured motorists coverage, the plaintiff sought to double the stated limit of coverage. The supreme court, analogizing recovery sought under uninsured motorists coverage for injuries suffered in a non-owned automobile with recovery sought under non-owned vehicle coverage for injuries suffered in such an automobile, stated:
 
 
 17
 We agree with the court of civil appeals that Ranzau did not pay an additional premium for or acquire added non-owned automobile protection from an uninsured motorist when he paid the premium of $3.00 for uninsured motorist coverage on the second owned automobile and hence this payment cannot serve as a basis for holding that he has double coverage and can recover two policy limits of $10,000 for injury to one person. Ranzau received such coverage under the basic policy and the premium charged therefor, whether or not the policy covered one or many owned automobiles, and without the payment of an additional premium upon the addition of owned automobiles. . . . Moreover, there was consideration for the extra premium of $3.00 upon the addition of the second owned automobile in the protection afforded Ranzau if an insured, while using the second owned automobile, suffered damages at the hands of an uninsured motorist . . . . [The allowance of stacking] could only follow from proof that a premium was charged and paid for this additional risk exposure and protection.
 
 
 18
 Id. at 797-798 (citation omitted).
 
 
 19
 Thus, the burden of proof is on the insured to show exactly what coverage he has purchased when he pays a premium for a second automobile under the uninsured motorists section of his policy. The fact that his policy gives no clear warning to a layman of any different coverage on the second automobile apparently is not sufficient.[8] Consequently, we hold that the Bogarts have not demonstrated that they paid two premiums for insurance which would cover them if injured in automobile #1 as the result of an accident caused by an uninsured motorist.[9]IV. Medical Payments Offset
 
 
 20
 With the Bogarts' maximum recovery under their uninsured motorists insurance limited to $10,000 per person, not to exceed $20,000 per occurrence, we now turn to a consideration of whether the $10,000/$20,000 figures are also minimums.
 
 
 21
 Under the "Expenses for Medical Services" section of the policy, Twin City becomes liable when, among other things, the named insured or any relative suffers bodily injury as a result of an accident occurring while he or she is occupying an owned automobile. The limit of liability is $500 per person and Twin City admitted liability to Mrs. Bogart and her two children of $1,500. Because of the Texas cases allowing the stacking of medical payments limitations (Atkins and Harlow, supra), the district court doubled the amount recoverable to $3,000[10] and this portion of the judgment is not attacked. Twin City argues, however, that any sums paid to the Bogarts under the medical expenses section of the policy must be offset against its total liability under the uninsured motorists section. It bases this argument on a clause in the uninsured motorists section of its policy which states:
 
 
 22
 The Company shall not be obligated to pay under this Coverage that part of the damages which the insured may be entitled to recover from the owner or operator of an uninsured automobile which represents expenses for medical services paid or payable under Section II [the medical payments section].
 
 
 23
 This question is one upon which no Texas appellate court has yet ruled. Nevertheless, there have been several significant decisions which point the way and which require us to hold that the above quoted clause is void as being contrary to the policy underlying article 5.06-1, V.A.T.S., supra footnote 2. The principal Texas case is Fidelity & Casualty Co. v. Gatlin, Tex.Civ.App.1971, 470 S.W.2d 924, which considered the effect that an "other insurance" clause would have on uninsured motorists coverage. That court stated:
 
 
 24
 Our [uninsured motorists insurance] law was obviously enacted by our Legislature for the benefit of the innocent victim of a financially irresponsible motorist. It should be liberally construed to fully accomplish that purpose. By enacting the law the Legislature did not attempt to fix any maximum limit of recovery but merely established a minimum requirement. The statute is plain in its direction that each policy of insurance issued must contain uninsured motorist protection in minimum amounts, without qualification, and it necessarily follows that any attempt on the part of an insurer to limit the effect of such provision must be held to be in derogation of the statute itself. It would be unconscionable to permit insurers to collect a premium for a coverage which they are required by statute to provide, and then to avoid payment of a loss because of language of limitation devised by themselves.
 
 
 25
 470 S.W.2d at 927.
 
 
 26
 This practice of voiding such limiting clauses in uninsured motorists insurance policies has been followed by other Texas courts of civil appeals (American Liberty Insurance Co. v. Ranzau, Tex. Civ.App.1971, 473 S.W.2d 249, and Northwestern Mutual Insurance Co. v. Lawson, Tex.Civ.App.1972, 476 S.W.2d 931), and has recently been adopted by the Texas Supreme Court in American Liberty Insurance Co. v. Ranzau, Tex. 1972, 481 S.W.2d 793. The Gatlin-Ranzau rationale also has been used to invalidate a clause which would reduce the recovery under uninsured motorists insurance by the amount of any workmen's compensation benefits received. Fidelity & Casualty Co. v. McMahon, Tex.Civ.App., 1972, 487 S.W.2d 371.[11]
 
 
 27
 *****
 
 
 28
 * * *
 
 
 29
 Despite the fact that, unlike Gatlin, the insurance sought to be offset in this case is found in the same policy the reasoning in both cases is identical. The Bogarts have suffered far more in damages than they will now receive in this judgment and this removes any fear of double recovery. Relying on Gatlin, Ranzau, and McMahon, we find that the medical payments offset clause is void as contrary to public policy.
 
 V. Applicability of Statutory Penalty
 
 30
 In addition to seeking recovery under the Twin City policy, the Bogarts asked the district court for, and were awarded, reasonable attorney's fees, 12% of the judgment as a penalty, and penalty interest from the date Twin City should have paid the loss. These sums were added to the judgment under the provisions of articles 3.62 and 3.62-1, V.A.T.S., which require them to be paid to an insured whenever insurance companies delay in paying certain kinds of claims against them.[12] Twin City contends that the assessment against it of that portion of these penalties which is attributable to the uninsured motorists recovery was error. We agree.
 
 
 31
 Because of the penal nature of both of these statutes, they must be strictly construed and a person "claiming under [one of them] must bring himself strictly within its provisions." First Texas Prudential Insurance Co. v. Long, Tex. Com.App.1932, 46 S.W.2d 297, 298. See also McFarland v. Franklin Life Insurance Co., Tex.1967, 416 S.W.2d 378; Key Life Insurance Co. v. Taylor, Tex.Civ.App.1970, 456 S.W.2d 707; Pan American Fire & Casualty Co. v. Trammell, Tex.Civ.App.1959, 322 S.W.2d 13. Of the types of insurance companies and policies included within these statutes, only "accident insurance" could be broad enough to cover uninsured motorists protection. A company selling this insurance is defined as one "doing business under any charter involving the payment of money or other thing of value, conditioned upon the injury, disablement or death of persons resulting from traveling or general accidents by land or water." Article 3.01, Sec. 2, V.A.T.S.
 
 
 32
 An examination of the statutory scheme for insurance in the state of Texas and an analysis of the purpose behind articles 3.62 and 3.62-1 convince us that no penalty should be attached to the recovery in the uninsured motorists insurance portion of this judgment.[13] The Texas Insurance Code regulates uninsured motorists insurance under a totally different chapter than it does accident insurance; furthermore motor vehicle insurance, in which class uninsured motorists insurance is found, is generally listed separately from those types of insurance to which the penalty provisions apply. See, e.g., Article 5.13, V.A.T.S.
 
 
 33
 Of greater significance, however, is the language in the two articles that makes each applicable to an insurance company which is liable for a loss from an accident but fails to pay it promptly. Although uninsured motorists insurance is first party insurance and may ultimately pay the insured for damages suffered in an accident, the insurer's liability does not arise solely from the occurrence of "injury, disablement or death" as it does in a true accident insurance policy. See Dorsey v. Fidelity Union Casualty Co., Tex.Civ.App.1932, 52 S.W.2d 775. Instead, under uninsured motorists coverage a company agrees to pay a loss if it is caused by an uninsured motorist from whom the insured is legally entitled to recover. Consequently, Twin City did not insure against an accident, but against an accident negligently caused by an uninsured person. The inadvisability of penalizing such an insurer is fully realized by recognizing that "[t]he manifest purpose of the statute is to effect a speedy collection of just claims without diminution." Boomer v. Massachusetts Bonding & Insurance Co., Tex.Civ.App.1941, 148 S.W.2d 945. Such speed is a laudatory requirement when liability is triggered by the mere happening of a loss, but becomes distinctly inappropriate when a determination of a third person's negligence and uninsured status must precede the existence of liability. Cf. Maryland Casualty Co. v. Hopper, Tex. Civ.App.1950, 237 S.W.2d 411. That portion of the judgment below which awarded statutory penalties on the uninsured motorists insurance recovery is reversed.
 
 
 34
 VI. Subrogation of the Workmen's Compensation Insurer
 
 
 35
 The final question presented on this appeal is raised by the intervenor, TransAmerica Insurance Company, and concerns whether a workmen's compensation insurer, who has paid benefits to an employee for injuries suffered in an automobile accident, has a right, in an action by that employee against his uninsured motorist insurance carrier, to subrogate itself to the judgment or a part of it. Because Mr. Bogart was going to Dallas to attend a meeting for his employer, his death en route was in the course and scope of his employment, and TransAmerica paid the Bogarts a total of $16,150.13 in full satisfaction of its liability under the Workmen's Compensation Act of Texas. It then sought to intervene in the present action, was denied any recovery, and brought this appeal.
 
 
 36
 TransAmerica bases its argument on article 8307, section 6a, V.A.T.S., which in essence provides that a workmen's compensation carrier has a right of subrogation in any recovery the employee may obtain against the third person who, because of the circumstances under which the accident occurred, has a legal liability to pay damages.[14] The district court, however, relied on a clause in the uninsured motorists section of the Twin City policy which stated that nothing should inure to the benefit of any workmen's compensation carrier,[15] and found the clause valid because the right of subrogation was said to exist only against a third party who was the tortfeasor.
 
 
 37
 TransAmerica's argument hinges on two word choices in the statute. It argues that the reference to a person with a "legal liability" implies a class larger than the tort-feasors themselves and includes uninsured motorists insurance carriers. This position is bolstered, it contends, by the use of the word "damages" which is asserted to be that which is paid by a carrier like Twin City when an insured makes a claim after an accident caused by a negligent uninsured motorist. Despite the superficial support for TransAmerica found in parts of section 6a of article 8307, a reading of the statute as a whole and the applicable Texas law convinces us that the argument is not persuasive.
 
 
 38
 A workmen's compensation insurance carrier's right of subrogation, if any, is derived solely from section 6a of article 8307. Fort Worth Lloyds v. Haygood, Tex.1952, 246 S.W.2d 865; Fidelity Union Casualty Co. v. Texas Power & Light Co., Tex.Civ.App.1931, 35 S.W.2d 782. Under this section the right has been recognized only in actions involving a tort-feasor. In upholding the constitutionality of this section, the Texas Commission of Appeals, in Consolidated Underwriters v. Kirby Lumber Co., Tex. Com.App.1924, 267 S.W. 703, 706, stated:
 
 
 39
 The original law could have been considered defective, among other respects, in that there was nothing in it to prevent an employe, in case he were injured by a "third person," from receiving both compensation from the insurer and, in addition, full damages for the same injuries from the third person; whereas the insurer in such a case, although having become bound and finally paying the "compensation," was not subrogated in respect to the employee's rights against the actual tort-feasor. This situation was, in reason, imperfect; . . . .
 
 
 40
 It was doubtless to remedy these defects and supply this juster and more politic substitute that the particular section of the amendment that is now under investigation was passed. It was not to create a liability against the actual tort-feasor; for that already existed. It was doubtless merely to apply that responsibility in such a way as to make the law regulating "employer's liability" a better and completer law, by not overcompensating the "employee ," and by reducing the burden of the "insurance" as to the insurer and its cost as to the "employer," and ultimately the public. (Emphasis added).
 
 
 41
 This limitation of the section to actions against the actual tort-feasor has been followed by other Texas courts. Fort Worth Lloyds v. Haygood, supra; Evans v. Venglar, Tex.Civ.App.1968, 429 S.W.2d 673; Yeary v. Hinojosa, Tex. Civ.App.1957, 307 S.W.2d 325; Traders & General Insurance Co. v. West Texas Utilities Co., 1942, 140 Tex. 57, 165 S. W.2d 713. The language in these cases makes the basis for such a limitation clear:
 
 
 42
 This statute does not provide for separate causes of action against the third party tort-feasor, one cause in the employee and another in the insurance company. There is but one cause of action against the third party tort-feasor, which belongs to the injured employee, who owns it burdened by the right of the insurance carrier to recoup itself for compensation paid . . . . The statute subrogates the carrier to the employee's rights against the tort-feasor to the extent of the compensation payments, and authorizes it to enforce, in the employee's name or in its own, the liability of said other person."
 
 
 43
 Evans v. Venglar, supra, 429 S.W.2d at 675 (emphasis in original) (citations omitted).
 
 
 44
 The Bogarts' recovery in the court below was not against the third party tort-feasor and the singular cause of action against that person has been in no way affected so as to prejudice TransAmerica's subrogation right in that action if and when it is brought. TransAmerica's fear of double recovery is similarly baseless: (1) because the double recovery against which section 6a of article 8307 was aimed was recovery first from the carrier and then from the tort-feasor, Consolidated Underwriters v. Kirby Lumber Co., supra; and (2) because the Bogarts have in fact suffered damages far in excess of the sum of the compensation benefits, the medical payments, the penalties appropriate thereto, and the uninsured motorists insurance that they have received or will receive as a result of this judgment. Finally, TransAmerica argues that subrogation in this case would reduce the burden of the insurance to the employer and to the public, which was the reason for enacting section 6a of article 8307. See Capitol Aggregates, Inc. v. Great American Insurance Co., Tex.1966, 408 S.W.2d 922. We recognize this as the theory behind the subrogation statute, but that theory cannot be used to create a right of subrogation in a case when under the statute itself there is none available. Because we hold that there is no right of subrogation in this case and because the clause which excludes workmen's compensation carriers from benefitting under the uninsured motorists section of the Twin City policy is clear and unambiguous, we affirm that portion of the judgment below which states that TransAmerica shall take, have, and recover nothing.
 
 
 45
 We, therefore, affirm in part, reverse in part, and remand the case to the district court for further proceedings not inconsistent with this opinion.
 
 
 46
 Affirmed in part, reversed in part.
 
 
 
 [1]
 The parties stipulated that the policy was in full force and effect at the time of the accident
 
 
 [2]
 Article 5.06-1, Insurance Code, V.A.T.S. provides in part:
 No automobile liability insurance . . . covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state unless coverage is provided therein or supplemental thereto, in the limits described in the Texas Motor Vehicle Safety-Responsibility Act, under provisions prescribed by the board, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom. The coverage required under this Article shall not be applicable where any insured named in the policy shall reject the coverage. . . .
 
 
 [3]
 Section 62 provides:
 Whenever any highway has been divided in two (2) roadways by leaving an intervening space or by a physical barrier or clearly indicated dividing section so constructed as to impede vehicular traffic, every vehicle shall be driven only upon the right hand roadway and no vehicle shall be driven over, across, or within any such dividing space, barrier, or section, except through an opening in such physical barrier or dividing section or space or at a cross-over or intersection established by public authority.
 
 
 [4]
 "An insured automobile" under the policy means "an automobile described in the policy for which a specific premium charge indicates that coverage is afforded."
 
 
 [5]
 The policy does contain one stated exception to this broad protection for the insured. It excludes "bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by the insured." (emphasis added). This exclusion does not come into play in this case, however, because both automobiles owned by the Bogarts were insured by the same Twin City policy. But see footnote 9 infra
 
 
 [6]
 The policy has a clause which states that "[w]hen two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each." It is specifically made inapplicable to the uninsured motorists coverage, however. This would leave only the plain language of the Protection Against Uninsured Motorists section to define the coverage purchased by the $3.00 premium, if it could still be said to apply. For a case which specifically considered this question and decided that, on similar facts, the second premium purchased the same coverage see Lipscombe v. Security Ins. Co., 1972, 213 Va. 81, 189 S.E.2d 320. The possible implications under Texas law of not including uninsured motorists protection within this clause are discussed in the text infra
 
 
 [7]
 The clause in the Gatlin policy read:
 "With respect to bodily injury to an insured while occupying an insured automobile not owned by the named insured, the insurance under Part IV shall apply only as excess insurance available to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.
 Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this Coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."
 
 
 [470]
 S.W.2d at 925
 This clause is virtually identical to the one in the Twin City policy, but it was not relied on herein in an attempt to limit recovery.
 
 
 [8]
 It is interesting to note that at the trial in Ranzau the defendant insurance company tried to introduce evidence to explain the $1.00 differential in premium between automobile #1 and automobile #2, but the trial court excluded the evidence after the plaintiff objected to it as irrelevant and as tending to vary the policy by parol. It is still more interesting to note from the bill of exceptions in Ranzau that the defendant's expert witness on this point explained the $1.00 difference to be attributable to non-owned automobile coverage. 473 S.W.2d at 250-251. There is, however, no similar offer of proof in the record before us
 The Texas court of civil appeals that decided Ranzau has faced the question of stacking policy limits once since that decision. In United Services Automobile Association v. Bratton, Texas Civ.App., No. 15028, Dec. 15, 1971, (unpublished), the court allowed stacking when the insured had purchased two separate policies from the same insurance company for his two automobiles and had paid a $4.00 premium for uninsured motorists coverage on each. Adhering to its decision in Ranzau and untroubled by the fact that the only "other insurance" in this case was issued by the same carrier, the court held that Gatlin precluded the insurer from relying on an "other insurance" clause in the policies to limit recovery. See footnote 7 supra.
 
 
 [9]
 The incongruity of the Texas decisions is demonstrated by the following hypothetical example: Assume that the Bogarts had left automobile #1 at home and had driven to Dallas in automobile #2 instead. Assuming the same accident occurred, the Bogarts would have submitted their claim and requested double the $10,000/$20,000 limit. In our opinion the Bogarts would prevail, even under Ranzau. The insurance purchased for automobile #2 with the $3.00 premium would certainly apply to give them one $10,000/$20,000 limit. See 481 S.W.2d at 798. Additionally, the $4.00 premium for automobile #1 purchased insurance which protects the family in every case except that described in footnote 5 supra. In fact, that exception (for injuries occurring in an owned but not an insured automobile) supports double recovery in the hypothetical example. It is evident that, but for an unfortunate choice of automobiles, the Bogarts would have been able to stack the limitations
 
 
 [10]
 Bogart paid $9.00 for medical coverage under automobile #1 and $8.00 for medical coverage under automobile #2
 
 
 [11]
 The clause at issue in McMahon stated:
 (b) Any amount payable under the terms of this endorsement because of bodily injury sustained in an accident by a person who is insured under this coverage shall be reduced by
 (2) the amount paid and the present value of all amounts payable on account of such bodily injury under any workmen's compensation law, . . . .
 The Bogarts' policy contains an almost identical offset clause, but Twin City has not objected to its not being given effect in this case.
 
 
 [12]
 Article 3.62 provides:
 In all cases where a loss occurs and the life insurance company, or accident insurance company, or life and accident, health and accident, or life, health and accident insurance company liable therefor shall fail to pay same within thirty days after demand therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of the loss, twelve (12%) per cent damages on the amount of such loss together with reasonable attorney fees for the prosecution and collection of such loss. Such attorney fee shall be taxed as a part of the costs in the case. The Court in fixing such fees shall take into consideration all benefits to the insured incident to the prosecution of the suit, accrued and to accrue on account of such policy.
 Article 3.62-1, V.A.T.S., essentially makes article 3.62 applicable to other kinds of insurance companies who issue a life, health, or accident policy and it requires payment by these companies within sixty days after the filing of a written proof of loss.
 
 
 [13]
 The district court also awarded the Bogarts the interest, reasonable attorney's fees, and 12% penalty on that portion of the recovery attributable to the medical payments insurance; Twin City does not appeal from that ruling. See United States v. United Servs. Auto. Ass'n, 5 Cir. 1970, 431 F.2d 735 (applying Texas law); Hallow v. Southern Farm Bureau Cas. Ins. Co., Tex.Civ.App.1969, 439 S.W.2d 365; American Indem. Co. v. Garcia, Tex. Civ.App.1965, 398 S.W.2d 146; Southwestern Fire & Cas. Co. v. Atkins, Tex. Civ.App.1961, 346 S.W.2d 892
 
 
 [14]
 Article 8307, Sec. 6a, V.A.T.S. provides:
 Where the injury for which compensation is payable under this law was caused under circumstances creating a legal liability in some person other than the subscriber to pay damages in respect thereof, the employee may at his option proceed either at law against that person to recover damages or against the association for compensation under this law, but not against both, and if he elects to proceed at law against the person other than the subscriber, then he shall not be entitled to compensation under this law. If compensation be claimed under this law by the injured employe or his legal beneficiaries, then the association shall be subrogated to the rights of the injured employe in so far as may be necessary and may enforce in the name of the injured employe or of his legal beneficiaries or in its own name and for the joint use and benefit of said employe or beneficiaries and the association the liability of said other person, and in case the association recovers a sum greater than that paid or assumed by the association to the employe or his legal beneficiaries, together with a reasonable cost of enforcing such liability, which shall be determined by the court trying the case, then out of the sum so recovered the association shall reimburse itself and pay said cost and the excess so recovered shall be paid to the injured employe or his beneficiaries. The association shall not have the right to adjust or compromise such liability against such third person without notice to the injured employe or his beneficiaries and the approval of the board, upon a hearing thereof.
 
 
 [15]
 "This policy does not apply under Section III [uninsured motorists section] so as to inure directly or indirectly to the benefit of any workmen's compensation or disability benefits carrier or any person or organization qualifying as a self-insurer under any workmen's compensation or disability benefits law or any similar law."